United States District Court
District of Connecticut
FILED AT     NEW HAVEN

Jan 30          20 04
Kevin F. Rowe, Clerk

By P. A. Villalo
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EARL CRAIG and<br>MARY GORE | : | |
| Plaintiffs | : | CASE NO. 302 CV 1630(JBA) |
| | : | |
| v. | : | |
| | : | |
| COLONIAL PENN INSURANCE<br>COMPANY | : | JANUARY 30, 2004 |
| | : | |
| Defendant | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Colonial Penn Insurance Company, (hereinafter "Colonial Penn"), submits

that it is entitled to Summary Judgment in its favor as there exists no genuine issue of material

fact in regards to all counts of the plaintiffs' Complaint.

## FACTS

The Colonial Penn Insurance Company issued a homeowner's insurance policy number

61404218 to Mary Gore and Earl Craig for the property located at 90-92 Miles Street in

Bridgeport, Connecticut. The policy incepted on August 3, 2000 at 12:01 a.m. On or about

August 2, 2000, a fire occurred at 1:15 a.m. at 90-92 Miles Street in Bridgeport, Connecticut.

On or about August 4, 2000, a second fire occurred on the same premises as the first fire.  On

August 28, 2000, plaintiffs made a claim as a result of the fire on August 4, 2000.  On August

28, 2000, the plaintiffs did not disclose the fire that occurred on August 2, 2000, prior to the

inception date of the policy.  By August 28, 2000, the plaintiffs were aware of the August 2,

2000 fire.  Colonial Penn undertook an investigation of the loss, and on May 9, 2001, denied

the claim.

**ARGUMENT**

**I.       Standard for Granting a Motion for Summary Judgment**

Summary judgment will be granted if there is no genuine issue as to any material facts

and the moving party is entitled to judgment as a matter of law.  F.R.C.P. 56(c); <u>Anderson v.

Liberty Lobby Inc.</u>, 477 U.S. 242, 256 (1986).  A dispute regarding a material fact is genuine

if the evidence is such that a reasonable jury could return a verdict for a non-moving party.

<u>Aldrich v. Landolf Cent. School District</u>, 963 F.2d 520, 523 (2nd Cir. 1992), <u>cert. denied</u>, 506

U.S. 965, 113 S.Ct. 440 (1992).  The initial burden is on the moving party to demonstrate the

nonexistence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once this burden has been discharged, the non-

moving party who bears the burden of proof at trial must go beyond the pleadings and isolate specific evidence that shows a genuine issue for trial. Id. at 324.

In Anderson v. Liberty Lobby, the Supreme Court explained that a genuine issue of fact is one about which the evidence is such that a reasonable jury could return a verdict for the non-moving party. The Court further stated that: there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. (internal citations omitted) 477 U.S. at 249-50. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to successfully oppose summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. If the non-moving party cannot identify such evidence, the Court must enter summary judgment in favor of the moving party." Celotex Corp., 477 U.S. at 322-323.

## II.    Count One and Count Two - Breach of Contract

**The Plaintiffs' Breach of Contract Claim Alleged in Count One and Count Two Are Barred by the Policy's One-Year Suit Limitation Provision.**

The plaintiffs allege that "on or about August 3-4, 2000 in the early hours of the morning, their property was caused to be set on fire, and the structure, contents and a nearby trailer and its contents burnt and completely destroyed." (See plaintiffs' Complaint, Count

3

One, paragraph 10, attached hereto as Exhibit H).  The Complaint was filed on July 18, 2002.

The policy provides at Section I conditions, paragraph 8, in pertinent part, that "no action can

be brought unless the policy provisions have been complied with and the action is started

within one year after the date of the loss." (See policy attached hereto as Exhibit I, attached to

Affidavit of Michael White).  Because the plaintiffs did not file their lawsuit until almost two

years after the date of the loss, their claims for breach of contract alleged in Count One and

Count Two are barred by the one-year suit limitation provision in the Policy.

　　　The Supreme Court of Connecticut held in Chichester v. New Hampshire Fire Ins. Co.,

74 Conn. 510, 51 A.545 (1902) that "Since a provision in a fire insurance policy requiring suit

to be brought within one year of the loss is a valid contractual obligation, a failure to comply

therewith is a defense to an action on the policy unless the provision has been waived or unless

there is a valid excuse for nonperformance..."  In Chichester, the Connecticut Supreme Court

has strictly enforced the one-year suit limitation provision. Subsequent courts have similarly

enforced the one-year suit limitation provision.  (See Bocchino v. Nationwide Mut. Fire Ins.

Co., 246 Conn. 378, 716 A.2d 1883 (1998); Vincent v. Mut. Reserve Fund Life Assn., 74

Conn. 684, 51 A. 1066 (1902)).  Therefore, there is no material issue of fact and summary

judgment should be granted in favor of the defendant for Count One and Count Two of the

plaintiffs' Complaint claiming breach of contract.

III.    **Count Three - Bad Faith**

**The Plaintiffs Have Failed To Establish Any Evidence Of Dishonest Purpose Or Sinister Motive On The Part Of The Defendant.**

Plaintiffs allege in Count Three of their Complaint that the conduct of the defendant amounted to a breach of the duty of good faith and fair dealing. The Connecticut law regarding a cause of action for bad faith was recently thoroughly reviewed by the Connecticut Appellate Court in <u>Alexandru v. Strong</u>, 81 Conn App 68, 837 A.2d 875 (2004). In <u>Alexandru</u> the Appellate Court affirmed the decision of the trial court in favor of the defendant on the claim of "bad faith" because the plaintiff had not produced evidence of "dishonest purpose or sinister motive." The Appellate Court in <u>Alexandru</u> summarized the Connecticut law of bad faith as follows:

> To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. See, e.g., *Gupta v. New Britain General Hospital*, 239 Conn. 574, 598, 687 A.2d 111(1996. "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive ... Bad Faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal

> quotation marks omitted.) *Habetz v. Condon*, 244
> Conn. 231, 237-38, 618 A.2d 501 (1992).
> Absent allegations and evidence of a dishonest
> purpose or sinister motive, a claim for breach of
> implied covenant of good faith and fair dealing is
> legally insufficient.    See, e.g., *Feinberg v.*
> *Berglewicx*, 32 Conn.App 857, 862, 632 A.2d
> 709 (1993).

Alexandru v. Strong, 81 Conn App 68, 81 837 A.2d 875 (2004).

As a result of the decision in Alexandru, it is clear that in Connecticut, whether the alleged bad

faith actions of the defendant which impede the payment of the claim are characterized as

"substantive" or "procedural," the plaintiff must produce some evidence of "dishonest purpose

or sinister motive." (See United Technologies Corp. v. American Home Assurance Co., 118

F. Supp.2d 181 (D.Conn. 2000).

Colonial Penn contends that the discovery in this matter has not demonstrated any facts

which support the plaintiffs' claim that the defendants in anyway impeded the plaintiffs' right

to receive payments because of "dishonest purpose or sinister motive." There is no basis to

conclude that the denial of the plaintiffs' claim or the handling of the plaintiffs' claim was an

act motivated by a sinister intention to mislead or to deceive the plaintiffs, and accordingly, the

court should grant the motion for summary judgment in favor of the defendant on the

plaintiff's claim for breach of the implied covenant of good faith and fair dealing. The

plaintiffs must produce evidence capable of supporting the conclusion that Colonial Penn

acted with a sinister motive or a dishonest purpose when dealing with the plaintiffs claim.

The defendant conducted extensive discovery which included interrogatories, requests

to produce. In addition, after motions to compel were served upon the plaintiffs by the

defendant, the plaintiffs identified witnesses and documents in compliance with Federal Rule

of Civil Procedure 26(a). The defendant conducted numerous depositions. The defendant

represents that there was no testimony offered by any witness identified by the plaintiffs in

support of their claim of bad faith that either directly or by inference would tend to establish

either "dishonest purpose or sinister motive" of the defendant. Similarly, the defendant

represents that the plaintiffs have not produced any documents which would tend to

substantiate their claim of bad faith.

Moreover, the court on December 19, 2003, entered an order that precluded the

plaintiffs from offering any additional testimony at trial beyond that which was previously

produced by the plaintiffs under oath. (See Endorsement Order, attached hereto as Exhibit F

and Transcript of Status Conference before Judge Arterton, on December 16, 2003, pages 17-

28). Since the plaintiffs did not sign their Interrogatory responses, those responses are not

under oath and pursuant to the order of the court the plaintiffs interrogatory responses cannot

be used to support their claims at trial and therefore cannot be used to support their claim of

7

bad faith. Therefore, the content of any testimony of the plaintiffs which may be admissible at trial and similarly the content of any affidavit in opposition of this motion must be found in the transcripts of the Examinations Under Oath which were obtained by the defendant prior to trial.

The defendant contends that there is no testimony which was given at the Examinations Under Oath of the plaintiffs which in any way substantiates any "dishonest purpose or sinister motive" of the defendant. Ms. Gore did testify that from the day she met Mr. Lawson, SIU Investigator of Colonial Penn, she believed her claim was going to be denied because her skin color is not white. However, the defendant represents that there was no testimony concerning a factual basis for Ms. Gore's allegations. (See affidavit of Mr. Lawson, attached hereto as Exhibit N). While Colonial Penn respects Ms. Gore's belief that her claim was going to be denied because she is not white, there was no testimony or facts which would substantiate her belief. Ms. Gore's unsubstantiated belief is not sufficient as a matter of law for a reasonable jury to find bad faith. Ms. Gore's unsubstantiated belief is not evidence that Colonial Penn acted with a dishonest purpose or sinister motive.

Based on Mr. Lawson's investigation, Colonial Penn had several reasons to deny the plaintiffs' claim. (See denial letter, attached hereto as Exhibit J). For instance, since the policy did not incept until August 3, 2000, there was no coverage for the August 2, 2000 fire. In

addition, Mr. Lawson's investigation revealed that prior to the August 2, 2000 fire, the

premises at 90-92 Miles Street were devoid of heat, hot water, copper piping and drains.  (See

Affidavit of Robert Nattrass, attached here to as Exhibit B).  Furthermore, subsequent to the

August 2, 2000 fire, the building located at 90-92 Miles Street was structurally unsound, (see

Affidavit of Robert Nattrass, attached here to as Exhibit B), and required demolition.  (See

Affidavit of Marion Guzik, attached hereto as Exhibit C).  Furthermore, Mr. Craig testified at

his Examination Under Oath that he did not live in the building after the fire on August 2,

2000.  (See Examination Under Oath of Earl Craig, page 71, paragraphs 7-25, attached hereto

as Exhibit G).  Based on these facts, it was reasonable for Colonial Penn to conclude that after

the fire on August 2, 2000, the insureds did not reside at the premises.  Section I, Property

Coverages of the policy of insurance provides:

> We Cover:
> 1.The dwelling on the *residence premises* shown
> in the Declarations, including structures attached
> to the dwelling.
>
> "residence premises" means the one or two
> family dwelling, the other structures, and grounds
> or that part of any other building where you
> reside and which is shown as the "*residence
> premises*" in the Declarations.

Because the plaintiffs did not reside at the premises on the inception date of the policy, nor did

they reside at the premises on the date of loss, there was no coverage for the August 4, 2000

fire. (See <u>Boliver v. Blue Ridge Ins. Co.</u>, 1999 WL 989585 at *3 (Conn. Super)).[1] Therefore Colonial Penn reasonably denied the claim for the August 4, 2000 fire in reliance on the case of <u>Boliver</u> and reasonably denied the claim for the August 2, 2000 fire as it was prior to the inception date of the policy. Therefore, it was reasonable for Colonial Penn to conclude that there was no coverage for this loss. (See denial letter, section 2, attached hereto as Exhibit J). Where there is a reasonable basis for the denial of the claim, there can be no recovery based on substantive bad faith. (See <u>United Technologies Corp. v. American Home Assurance Co.</u>, 118 F.Supp.2d 181).

For all the foregoing reasons, there are insufficient facts on which a reasonable jury could conclude that the defendant acted with "sinister motive" or "dishonest purpose." Furthermore, "the standard of proof applicable to claims of bad faith is clear and convincing evidence." <u>M.J. Daly & Sons, Inc. v. City of West Haven</u>, 66 Conn.App. 41, 53-783 A.2d 1138 (2001). The plaintiffs have not produced any evidence on which a reasonable jury can conclude that defendant acted with a dishonest purpose or sinister motive, therefore, the defendant's motion for summary judgment should be granted.

---

[1] All cases that contain only Westlaw cites are attached hereto as Exhibit L.

**IV.     Count Four- CUIPA**

**A. The Defendant's Motion For Summary Judgment On The Fourth Count of the Plaintiffs' Complaint Should Be Granted Because There is No Private Right of Action Under Connecticut General Statutes § 38a – 815, The Connecticut Unfair Insurance Practices Act.**

The Fourth Count of the plaintiffs' Complaint, which alleges a violation of The Connecticut Unfair Insurance Practices Act, (hereinafter "CUIPA"), is insufficient as a matter of law because there exists no private right of action under CUIPA. Although the Connecticut Supreme Court has not yet held that CUIPA does not allow for a private cause of action, the better reasoned, and the majority of, Connecticut Superior Court decisions that have addressed this issue have concluded that there is no private right of action under CUIPA. M&J's Southern Style Restaurant, Inc. v. The Front Street Group, 2003 WL 22245579 (Conn. Super. Sept. 18, 2003); American Progressive Life & Health Ins. Co. of New York v. Better Benefits, LLC, 2003 WL 22205977 (Conn. Super Sept. 10, 2003); Odd Fellows Home of CT Inc. v. The Hartford Fidelity and Bonding Co. 2003 WL 1484319 (Conn. Super. March 12, 2003); Liquore v. Assurance Co. of America, 2002 WL 521334 (Conn. Super. March 19, 2002); Kaminiski ex. rel. Garonia v. Reed, 2001 WL 1682732 (Conn. Super. Dec. 12, 2001); Delpier v. Conn. Interlocal Risk Mgt. Agency, 2001 WL 1681912 (Conn. Super. Nov. 28, 2001); Chapell v. Larosa, 2001 WL 58057 (Conn. Super. Jan. 5, 2001); Thompson & Peck, Inc. v. Reliance Ins. Co., 2001 WL 1178596 (Conn. Super. Aug. 30, 2001); Conway v. Travelers Cas.

& Sur. Co. of America, 2000 WL 1918051 (Conn. Super. Dec. 15, 2000); Braca v. Cigna Ins. Co., 2000 WL 1207292 (Conn. Super. Aug. 11, 2000); Perrelli v. Strathmore Farms, 2000 WL 277189 (Conn. Super. March 2, 2000).

There are several reasons why the majority of courts have found that there is no private right of action under CUIPA. First, the CUIPA statute itself does not expressly provide for a private right of action. Povroznik v. Rivercliff Fuel, Inc., 2001 WL 1356291 (Conn. Super. Oct. 22, 2001); King v. Ehorn, 1993 WL 489649 (Conn. Super. Nov. 17, 1993); Warner v. Sanford Hall Agency, 1993 WL 45044 (Conn. Super. Feb. 9, 1993); Langlais v. Guardian Life Ins. Co., 1992 WL 161446 (Conn. Super. July 7, 1992). In contrast, Connecticut General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act, (hereinafter "CUTPA") does provide for a private right of action. If the legislature had intended to provide a private right of action under CUIPA, it could and would have done so expressly as it did in CUPTA. Liquore, 2002 WL 521334 at *3 (noting that because "the Connecticut Unfair Trade Practices Act (CUTPA) expressly provides for a private cause of action under the act; the legislature certainly could have provided such authority under CUIPA if it had so intended").

Second, CUIPA is a regulatory statute to be administered by the state and the enforcement powers were given to the Office of the Insurance Commissioner with no allowance for a private cause of action. Povroznik, 2001 WL 1356291; Stabile v. Southern

Connecticut Hospital Systems, 1006 WL 651633 (Conn. Super. Oct. 31, 1996); See also

Warner, 1993 WL 45044 at *1, (noting that, "Mead determined . . . that it was possible to state

a cause of action under CUTPA for a violation of CUIPA but characterized CUIPA as a penal

statute requiring a construction 'limiting rather than expanding civil liability.") See also

Langlais, 1992 WL 161446, (noting that it is unlikely that the legislature intended two

statutory causes of action to redress the same conduct). In Warner and in Langlais, as in this

case, the plaintiffs alleged violations of CUTPA and CUIPA in separate counts. Nevertheless,

those courts found that doing so was not enough to save the CUIPA count.

> **B. The Defendant Should Be Granted Summary Judgment On The Fourth Count Of The Plaintiffs' Complaint Because The Plaintiffs Produce No Evidence That The Defendant's Actions Constitute A General Business Practice As Required By CUIPA.**

The plaintiffs have not disclosed any evidence that the defendant's conduct constituted

a general practice of refusal to pay claims without a reasonable investigation. The defendant

now moves for summary judgment on Count Four of the plaintiffs' Complaint. The law in

Connecticut is well settled that in order to support a claim based on the violation of CUIPA,

the plaintiff must allege the existence of a general business practice regarding the complained

of conduct. Mead v. Burns, 199 Conn. 651, 659, 509 A.2d 11 (1986). "Looking to the statute

as a whole, we contend that claims of unfair settlement practices under CUIPA require a

showing of more than a single act of insurance misconduct." Id. at 659. Mead has been

consistently followed.  Moreover, it is also well-established principle that a plaintiff's allegation of unfairness in connection with the single insurance claim, which is the subject of dispute, does not establish a "general business practice." Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 671-72, 613 A.2d 838 (1992).  As the Connecticut Supreme Court observed in Lees v. Middlesex Ins. Co., 229 Conn. 842, 849, 634 A.2d 1282 (1994), ". . . the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct."  According to the Court, "the defendants alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a general business practice as required by § 38a-316(6)." Id.

The plaintiffs alleged improper conduct in the handling of their insurance claim. Neither the discovery, nor depositions in this matter nor any testimony at the Examinations Under Oath of the plaintiffs have disclosed any evidence that any alleged misconduct of the defendant constituted a general business practice.[2]  Even if the court was to find that the plaintiffs' claim was mishandled, there is no evidence of a general pattern of practice as required under CUIPA.  The plaintiffs suggested that evidence of misconduct of the defendant would be supplied by their public adjuster, Wesley Robinson.  The defendant obtained the

---

[2] See discussion at page 6-8 above wherein the court precluded any further testimony and therefore any affidavits from the plaintiffs beyond that of what they testified to at the Examinations Under Oath must be precluded.

deposition of Mr. Robinson and he testified the he does not recall having any problems with Colonial Penn when adjusting claims. Additionally, Mr. Robinson did not recall ever having heard of other situations where other people have had problems settling claims with Colonial Penn. (See deposition of Wesley Robinson, pages 167-168, paragraphs 23-8, attached hereto as Exhibit M).

Because the documents produced during discovery by the plaintiffs in support of their CUIPA claim fail to establish directly or by inference any general business practice or other CUIPA violations; and because the testimony of the witnesses disclosed by the plaintiffs in support of their CUIPA claim is similarly devoid of any such evidence, the claim of the plaintiffs may only be supported at trial by their own testimony.[3]

The defendant contends that there is no testimony which was given at the Examinations Under Oath of the plaintiffs which will in any way substantiate any general business practice, in violation of CUIPA, of the defendants and therefore the defendant's motion for summary judgment should be granted.

---

[3] See discussion at page 6-8 above wherein the court precluded any further testimony and therefore any affidavits from the plaintiffs beyond that of what they testified to at the Examinations Under Oath must be precluded.

**V.     Count Five- CUTPA**

**The Defendant's Motion For Summary Judgment On Count Five Should Be Granted Because The Fifth Count of the Plaintiffs' Complaint For CUTPA Is Based On Violation Of CUIPA, And Absent A Viable CUIPA Claim, The CUTPA Claim Is Insufficient As A Matter Of Law**

The Fifth Count of the plaintiffs' Complaint alleges a violation of CUTPA . In Count Five, the plaintiffs reincorporate the allegations of Count Four and allege that as a result, the defendant has violated CUTPA.  It is well settled in Connecticut, that in order to allege and prove a violation of CUTPA, based on a violation of CUIPA in the context of an insurance claim, a plaintiff must allege and prove the allegations necessary to satisfy a violation of CUIPA.  Heyman Assoc. No. 1 v. Ins. Co., 231 Conn. 756, 767, 653 A.2d 122 (1996); Lees v. Middlesex Ins. Co., 229 Conn. at 847; Mead v. Burns, 199 Conn. at 663-666.  For the reasons articulated in Section IV B above, the defendant contends that there is insufficient evidence to establish any business practice by defendant in violation of CUIPA.  Therefore the plaintiffs cannot recover on a claim of CUTPA based on CUIPA and the defendant's motion for summary judgment should be granted.

**VI.    Count Six and Count Seven- Intentional and Negligent Misrepresentations.
The Plaintiffs Have Failed To Allege False Representation Sufficiently As A
Matter of Law.  Furthermore, The Plaintiffs Failed To Prove False
Misrepresentation To Their Detriment.**

In Count Six and Count Seven, the plaintiffs allege fraudulent conduct of the defendant

in that they allege the defendant intentionally and/or negligently made misrepresentations.  In

order to recover on the plaintiffs' fraud claim, the complaint must be specific.  The Supreme

Court of the United States has held that "to show a cause of action it was necessary that the

petition state distinctly the particular acts of fraud and coercion relied on, specifying by whom

and in what manner they were perpetuated, with such definitiveness and reasonable certainty

…" <u>Chamberlan Mach Works v. U.S.</u>, 270 U.S. 347, 349, 46 S.CT 225 (1926).  Therefore,

Rule 9 of the Federal Rules of Civil Procedure follows the Supreme Court and contains the

following provision:

> **9(b)  Fraud, Mistake, Condition of the Mind**.
> In all averments of fraud or mistake, the
> circumstances constituting fraud or mistake shall
> be stated with particularity.    Malice, intent,
> knowledge, and other condition of mind of a
> person may be averred generally.

The United States District Court, District of Connecticut has held that in order to satisfy

Fed.R.Civ.P. 9(b), "a plaintiff should specify the time, place, speaker, and content of the

alleged misrepresentations. <u>Goudis v. American Currency Trading Corp.</u>, 233 F.Supp.2d 330,

17

333 (D.Conn. 2002) quoting <u>Caputo v. Pfizer, Inc.</u>, 267 F.3d 181, 191 (2d Cir. 2001). The District Court of Connecticut noted that "the complaint must also explain how those representations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." <u>Id.</u> "Under Rule 9(b), a plaintiff's claim must be sufficiently particular to provide each defendant with notice of his alleged wrongful conduct." <u>Id.</u> at 334 quoting <u>Goldman v. Belden</u>, 754 F.2d 1059, 1070 (2d Cir. 1985).

  In <u>Goudis</u>, because the plaintiffs' complaint did not specify the dates of specific meetings, what was said on each occasion, or who made the statement, the district court held that the allegations did not comply with Rule 9(b). <u>Id.</u> In the matter at bar, the plaintiffs have failed to allege their claims of fraudulent misrepresentation with sufficient particularity. Plaintiffs' cause of action for fraudulent misrepresentation is conclusory and contains no specific detail as to the time, place and content of the alleged misrepresentations. Plaintiffs' Complaint alleges that defendant, Colonial Penn, knew that its representations were false, however, the complaint is not sufficiently particular with respect to the time, place or speaker of the misrepresentations. Furthermore, the plaintiffs' conduct fails to allege what misrepresentations were made, where the misrepresentations were stated and by whom the misrepresentations were made.

Even if the plaintiffs had alleged misrepresentation with particularity, the defendant contends there is no evidence adduced during the discovery in this matter at the plaintiffs' Examinations Under Oath to support the plaintiffs' claim of either intentional or negligent misrepresentation.[4]  The defendant contends that that the plaintiffs failed to allege false representation with particularity and therefore the defendant's motion for summary judgment on Count Six and Count Seven should be granted.

**VII.    Count Eight - Defamation**

> **The Plaintiffs' Discovery Has Not Disclosed Any Evidence That Colonial Penn Has "Published" Any Untrue Statements Regarding The Plaintiffs.  Nor Has Colonial Penn Compelled Plaintiffs To Defame Themselves, As Alleged In Count Eight Of The Plaintiffs' Complaint.**

There are four essential elements to defamation.  They are: (1) a false statement of fact; (2) unprivileged publication of the statement; (3) publication caused by negligent or intentional conduct; and (4) injury to reputation.  <u>Raye v. Wesleyan University</u>, 2003 WL 1962881*2 (Conn.Super.)  Plaintiffs allege that Colonial Penn stated that the plaintiffs were responsible for the fire or fires, which destroyed the plaintiffs' property.  Additionally, plaintiffs allege that Colonial Penn stated that the plaintiffs had committed arson, and were arsonists.  However, plaintiffs' discovery responses disclose no evidence as to where or when

---

[4] See discussion at page 6-8 above wherein the court precluded any further testimony and therefore any affidavits from the plaintiffs beyond that of what they testified to at the Examinations Under Oath must be precluded.

or to whom the statements were published.  (See Affidavit of Mr. Lawson, attached hereto as Exhibit N).

Finally, the plaintiffs allege that Colonial Penn caused the plaintiffs to defame themselves.  However, once again, the discovery in this matter has not produced any evidence, or testimony produced any evidence on which a reasonable Jury could conclude that the plaintiffs were compelled to defame themselves.[5]

The defendant contends that there is no evidence which will in any way substantiate the defamation claim alleged by the plaintiffs.  The only statement made by Colonial Penn to the effect that the plaintiffs were arsonists was in a letter sent to the plaintiffs' counsel on May 9, 2001 denying the claim.  (See denial letter attached hereto as Exhibit J).  The letter was never published by the defendant.  Sending this letter to the plaintiffs' counsel does not constitute publication.  Furthermore, Connecticut General Statute § 38a-816(6)(n), Colonial Penn had an obligation to inform the plaintiffs of the specific reasons for the denial of the claim.  Specifically, Connecticut General Statute § 38a-816(6)(n) provides, in pertinent part: "failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim …"  Therefore Colonial Penn was required by law to inform the plaintiff of the specific factual reason for the denial of the claim.

---

[5] See discussion at page 6-8 above wherein the court precluded any further testimony and therefore any affidavits from the plaintiffs beyond that of what they testified to at the Examinations Under Oath must be precluded.

The Connecticut Supreme Court has held that as a general rule in noting that, "no action for defamation exists if the defendant publishes the defamatory statements to only the plaintiff, and the plaintiff subsequently disseminates the statements to a third person." Cwelinsky v. Mobil Chemical Company, 267 Conn. 210, 218, 837 A.2d 759 (Conn. 2004). "The cause of action for self defamation requires that a defamatory statement be communicated to one other than the plaintiff, and that the plaintiff communicated the statement under compulsion", not voluntarily. DeFilippo v. Balfour Beatty Const., Inc., 47 Conn.Supp. 555, 558 19 IER Cases 1141, 33 Conn. L. Rptr. 466, 814 A.2d 919, 921 (Conn.Super. 2002). In Spain v. Blue Cross Blue Shield of Connecticut, Superior Court, judicial district of New Haven at New Haven, Docket No. 249522 (2 CSCR 424) (March 9, 1987, Flanagan, J.) the court "explained that the publication requirement may be satisfied where the plaintiff is compelled to publish a slanderous statement to a third party if it was reasonably foreseeable to the defendant that the plaintiff would be so compelled."

Colonial Penn contends that there is no evidence to support the plaintiffs' claim that they were defamed, nor is there any evidence to support the plaintiffs' allegations that the plaintiffs defamed themselves as alleged in Count Eight of the plaintiffs' Complaint. Therefore, the defendant's motion for summary judgment should be granted on Count Eight of the plaintiffs' Complaint.

21

**VIII.    Count Nine - Severe Emotional Distress**

**The Plaintiffs Have Failed To Produce Evidence That Colonial Penn's Conduct Was Extreme And Outrageous.**

In order to claim Intentional Infliction of Emotional Distress, the plaintiffs must prove "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543-552 (D. Conn. 1996) quoting Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337, 1342 (1986).  The plaintiffs must prove that Colonial Penn's conduct was "extreme and outrageous."  Id.  The general rule is "that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a serious kind."  Id. Even if Colonial Penn's conduct was not ideal, the handling of the claim must be found extreme and outrageous. The defendant's investigation had developed sufficient information to reasonably conclude that the plaintiffs were responsible for the fires.  (See denial letter attached hereto as Exhibit J.  See also Affidavit of Mr. Lawson, attached hereto as Exhibit N). Because there was a reasonable basis for the conclusion of the defendant; because the plaintiff has not produced any evidence to suggest that the defendant did not have a

reasonable basis to deny their claim and because Connecticut law requires that the defendant advise the plaintiffs of the reason it denied the claim, the conduct of the defendant cannot be considered extreme and outrageous by any reasonable jury.

To prove negligent infliction of emotional distress the plaintiff must prove "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress. <u>Carrol v. Allstate Ins. Co.</u> 262 Conn. 433, 444, 815 A.2d 119 (S.Ct.Conn. 2003).

The plaintiffs allege that the defendant's accusations that the plaintiffs burnt their own property caused the plaintiffs severe emotional distress. As defendant explained above, (see discussion at page 20), Colonial Penn had a statutory obligation to inform the plaintiffs of the specific reasons for the denial of their insurance claim because pursuant to Connecticut General Statute § 38a-816(6)(n), and therefore Colonial Penn was required by law to inform the plaintiffs of the specific factual reason for the denial of the claim. Since the notice was required by law, as a matter of law, there can be no basis to consider the notice as extreme and outrageous.

23

Furthermore, the plaintiffs have not put forth any evidence to prove that Colonial Penn intended to inflict emotional distress or that Colonial Penn's conduct was extreme or outrageous, or that Colonial Penn was the cause of the plaintiffs' distress.[6]  The defendant contends that the plaintiffs have failed to produce any evidence that the defendant's conduct was extreme or outrageous, and therefore, the defendant's motion for summary judgment should be granted.

**CONCLUSION**

For all of the foregoing reasons, defendant respectfully submits that it is entitled to the entry of Summary Judgment in its favor as to the plaintiffs' Complaint in its entirety.

DEFENDANT, COLONIAL PENN
INSURANCE COMPANY


By _Alyssa Vigue_____
    Alyssa S. Vigue
    Skelley Rottner P.C.
    P.O. Box 34089
    Hartford, Connecticut 06134-0890
    (860) 561-7077
    Fed. Bar # ct25178

---

[6] See discussion at page 6-8 above wherein the court precluded any further testimony and therefore any affidavits from the plaintiffs beyond that of what they testified to at the Examinations Under Oath must be precluded.

**CERTIFICATION**

    I hereby certify that a copy of the foregoing notice was mailed, via certified mail, on January 30, 2004, to the following counsel and pro se parties of record:

        Caleb M. Pilgrim, Esquire
        Law Offices of Attorney Caleb M. Pilgrim
        1404 Whalley Avenue
        New Haven, CT  06515

                                                      Alyssa S. Vigue