UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| EARL CRAIG & MARY GORE | * | CASE NO.302 CV 1630(JBA) |
| Plaintiffs | * | |
| | * | |
| v. | * | APRIL 8, 2004 |
| | * | |
| COLONIAL PENN INSURANCE, INC. | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

### BACKGROUND:

Miles Street, Bridgeport, is a short, largely residential street, with limited inner-city population. Many fires have occurred on Miles Street since 1990. Specifically, there were fires on 5/13/90; 12/31/94; 8/2/00; 8/4/00; 4/18/01; 7/6/01; 7/29/01; 11/1/01; 6/28/02;9/25/02;11/04/02. (Exhibit A).[4]

In or about August 2000, Plaintiffs were owners of a property located at 90-92 Miles Street, Bridgeport, CT 06604. Some time in or about July 17, 2000, Plaintiff Mary Gore had sought insurance from the Defendant. (Exhibit M) There is some dispute as to when Plaintiff actually paid the premium. However, coverage issued on August 3, 2000, at 12.01 a.m.

Beginning about August 2, 2000, and August 4, 2000, Plaintiffs' property was repeatedly burnt until the entire three-story building was eventually destroyed in or about April, 2001. The Bridgeport Fire Department Reports indicate that the fires at the Plaintiffs' home were "incendiary", and arson was suspected.

---

[4] .      Upon information and belief, there have been other fires since, including at least one other fire but the Bridgeport Fire Department Records Division was unable to provide a copy of the particular report.

(Exhibit A)  Plaintiffs were rendered homeless as a result of the first and second fires at 90-92 Miles Street, and obliged to live in an old mobile home or  motor caravan adjoining the burnt-out premises.

Shortly after the second fire, an anonymous call to the State Department of Children and Families ("DCF") led the DCF to seize the Plaintiffs' minor children on the grounds that the Plaintiffs had placed their minor children at risk, and kept them in an unsanitary, and unhealthy condition.[5] (Exhibit N) The Plaintiffs' pets (their two dogs) which had survived the second fire were also seized by the local dog pound after another anonymous call. (Exhibit O)

Plaintiffs maintained that they were victims of arson, advised the Defendant accordingly through their then lawyer, Joseph Mirsky's office, and sought compensation under their homeowners' policy with the Defendant. After a prolonged investigation, by letter dated May 9, 2001, Defendant denied the Plaintiffs' claim to be paid for the lost property.

Defendant now moves for summary judgment as to Plaintiffs' Count One and Two - Breach of Contract,  Count Three - Bad faith,  Count Four- CUIPA, Count Five - CUTPA, Count Six and Seven - Misrepresentation, Count Eight – Defamation, Count Nine - Severe Emotional Distress,   For the reasons adduced below, the Defendant's motion for summary judgment should be denied in its entirety.

## A.    The Law Relating to Summary Judgment:

Fed.R.Civ.P. 56(c) provides that summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[5].      Plaintiffs would request that the Court take judicial notice of these facts pursuant to FRE 201(b)(2) as facts capable of accurate and ready determination by resort to sources(e.g. the relevant DCF's records)  whose accuracy cannot reasonably be challenged.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 247 (1986).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56;  <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 323 (1986). <u>LeBoeuf, Lamb, Greene & MacRae v. Worsham</u>, 185 F.3d 61, 64 (2d Cir.1999).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e);  <u>Byrnie v. Town of Cromwell</u>, 243 F.3d 93, 101 (2d Cir.2001).   The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita,</u> supra at 586, and must "come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise." <u>Trans Sport v. Starter Sportswear</u>, 964 F.2d 186, 188 (2d Cir.1992)

As this Court well knows, in ruling on a motion for summary judgment, the Court views all facts, inferences and ambiguities in a light most favorable to the non-moving party. <u>Ametex Fabrics, Inc. v. Just In Materials, Inc.,</u> 140 F.3d 101, 107 (2d Cir.1998).  See also <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Summary judgment "may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." <u>Cronin v. Aetna Life Ins. Co.,</u> 46 F.3d 196, 202 (2d Cir.1995).

12

Plaintiffs submit in this case that viewed in the light most favorable to the non-moving Plaintiff parties in this case, the materials illumine facts, inferences and ambiguities, which compel a reasonable conclusion that there exist here genuine issues of material fact, and that Defendant breached their obligations to the Plaintiffs, and Defendant's motion for summary judgment should be denied in its entirety.

II    **Defendant's Hands Are Unclean In This Case. Moreover, Alternatively, Either Promissory Estoppel, Or Equitable Estoppel, Bar Any Application Of The Policy's One-Year Suit Limitation Provision**

By letter dated May 9, 2001, Defendant denied the Plaintiffs' claim to be paid for the lost property. There had been fires at the Plaintiffs' property on 8/2/00; 8/4/00; and 4/18/01. Defendant's denial of coverage came some ten (10) months after the Defendant knew of the first fire(s). Defendant now argues that the Plaintiffs action is barred because of the one-year suit limitation in their homeowners' insurance policy

Plaintiffs argue alternatively that the doctrines of promissory and equitable estoppel apply to the facts of the present case. "Promissory estoppel involves a clear and definite promise, while equitable estoppel involves only representations and inducements." Union Carbide Corp. v. Danbury, 257 Conn. 865, 874 n. 2 (2001), quoting 28 Am.Jur.2d 465, Estoppel and Waiver § 35 (2d Ed.2000). "A fundamental element of promissory estoppel ... is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn.App 152, 162, 714 A.2d 21 (1998), cert. denied, 247 Conn. (1998). "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." Chotkowski v. State, 240 Conn. 246, 268 (1997). "Estoppel rests on the misleading

13

conduct of one party to the prejudice of the other." Brzezinek v. Covenant Ins.
Co., 74 Conn.App. 1, 8 (2002).

The Connecticut Supreme Court, whether applying the doctrine of equitable or
promissory estoppel, has "recognized that estoppel always requires proof of two
essential elements: the party against whom estoppel is claimed must do or say
something calculated or intended to induce another party to believe that certain
facts exist and to act on that belief; and the other party must change its position
in reliance on those facts, thereby incurring some injury." Union Carbide Corp. v.
Danbury, supra, at 873 (applying equitable estoppel); see also Chotkowski,
supra, at 268 (applying promissory estoppel).

Under the doctrine of equitable estoppel, as opposed to the doctrine of
promissory estoppel, proof of a clear and definite promise is unnecessary. Union
Carbide, supra at 865 (2001) In Morris v. Costa, 174 Conn. 592, 599 (1978), the
Connecticut Supreme Court noted that "[c]ourts, applying equitable principles,
have laid down the doctrine of equitable estoppel by which a defendant may be
estopped by his conduct from asserting defenses such as the statute of
limitations."

Thus, on one hand, the doctrine of promissory estoppel, as set forth in Section 90
of the Restatement [ (Second) of Contracts] requires [a] promise which the
promisor should reasonably expect to induce action or forbearance on the part of
the promisee or a third person and which does induce such action or forbearance
is binding if injustice can be avoided only by enforcement of the promise ... A
fundamental element ... therefore, is the existence of a clear and definite
promise which a promisor could reasonably have expected to induce reliance.
Thus, a promisor is not liable to a promisee who has relied on a promise if,

14

judged by an objective standard, he had no reason to expect any reliance at all."
Stewart v. Cendant Mobility Services Corp., 267 Conn. 96, 104-05 (2003).

On the other hand, equitable estoppel arises if: (1) the defendant made a definite
misrepresentation of fact, and had reason to believe that the plaintiff would rely
on it, and (2) the plaintiff reasonably relied on that misrepresentation to his
detriment. Kavowras v. The New York Times Co., et al, 328 F.3d 50 (2003), 172
L.R.R.M. (BNA) 2389, 148 Lab.Cas. P 10,198

Equitable estoppel is restricted to conduct or representations which were
'directed to the very point of obtaining the delay, of which [the party to be
estopped] afterward seeks to take advantage by pleading the statute.' " Consoli v.
Clarke, Superior Court, Judicial District of Hartford, Docket No. CV 96 0556499
(December 10, 1996, Wagner, J.T.R.) (18 Conn. L. Rptr. 363), quoting Lippitt v.
Ashley, supra, 89 Conn. at 480.

In applying the estoppel elements to cases involving a statute of limitations issue,
Connecticut courts have routinely held that "[e]quitable tolling 'permits a
plaintiff to avoid the bar of the statute of limitations if despite all due diligence
he is unable to obtain vital information bearing on the existence of his claim' "
Gallop v. Commercial Painting Co., 42 Conn. Supp. 187, 192 (1992). Equitable
estoppel, in this Circuit, posits that: "Unlike equitable tolling, which is invoked in
cases where the plaintiff is ignorant of his cause of action ... equitable estoppel is
invoked in cases where the plaintiff knew of the existence of his cause of action
but the defendant's conduct caused him to delay bringing his lawsuit." Cerbone
v. International Ladies' Garment Workers' Union v. Combustion Engineering,
Inc., 768 F.2d 45, 49-50 (2d Cir.1985).

15

In <u>Eveleno v. Colonial Penn Ins. Co.</u>, 2001 N.Y. Slip Op. 21309 Civil, 188 Misc.2d 454, 457-461, 728 N.Y.S.2d 907 [Civ.Ct. Queens County 2001], plaintiff sought to recover on a homeowners' insurance to plaintiff by the defendant insurer, for damage allegedly sustained to the plaintiff's in – ground pool on January 7, 2000. An inspection of the pool was conducted on January 26, 20000. Plaintiff moved for summary judgment, arguing that the defendant had all information relative to the claim by January 26, 2000 and that the failure of the defendant to issue a denial of the claim until February 29, 2000, constituted a violation of the requirements of 11 NYCRR 216.6, the Standards for Prompt, Fair and Equitable Settlements. Plaintiff stated that such a violation estopped defendant from denying the claim. Defendant argued that the regulations did not create a private right of action. After reviewing the relevant case law, the court awarded judgment for the plaintiff. (Exhibit P)

In the instant case, the first fires at the Plaintiffs' premises occurred on August 2, 2000, and August 4, 2000. Shortly thereafter, Plaintiffs and their then attorney, Joe Mirsky's office notified the defendant of the fire. Defendants did not write to deny Plaintiffs' claim until May 9, 2001. (Exhibit Q) Plaintiffs in this case assert that Defendant's denial of their claims was wrongful and unlawful either on the grounds of promissory estoppel or equitable estoppel. Plaintiff Gore testified in her deposition that at all times she did whatever the Defendant's agents/representatives told her to do. (Exhibit R)

Defendant's actions violated its duty to settle the Plaintiffs' claim promptly, fairly, and equitably. Defendant's actions in this case – denying the Plaintiffs' claim some 10 months after the Defendant knew of the fire(s) was unconscionable and unlawful, and should be barred either on the grounds of promissory, or alternatively, equitable estoppel.

16

Defendant breached its agreement with the Plaintiffs and at all times misrepresented its intentions as to coverage of the Plaintiffs' losses and their intention to deny coverage. Viewed in the light most favorable to the non-moving Plaintiff parties in this case, the materials illumine facts, inferences and ambiguities, which compel the conclusion that there exist here genuine issues of material fact, and that Defendant breached their obligations to the Plaintiffs, and Defendant's motion for summary judgment should be denied as to Counts One and Two.

**III.    Defendant Showed Dishonest Purpose And/Or Sinister Motive In This Case.  Among Other Things, Defendant Breached Covenant Of Good Faith And Fair Dealing By A Priori Cancellation Of Plaintiffs Policy, Before Its "Investigaton", Accusing And Damaging Minority Plaintiffs:**

In Connecticut, an implied covenant of good faith and fair dealing has been held to apply in insurance contracts.  See Hoyt v. Factory Mutual Liberty Ins. Co., 120 Conn. 156, 159 (1935); Bartlett v. Travelers Ins. Co., 117 Conn. 147 (1933); cf. Grand Sheet Metal Products Co. v. Protection Mutual Ins. Co., 34 Conn.Sup. 46, (1977), Magnan v. Anaconda Industries, Inc., (193 Conn. 558, (1984); see also Restatement (Second), Contracts § 205 (1979);  43 Am.Jur.2d, Insurance § § 141, 142; 3 G. Couch, Insurance 2d (Rhodes Rev.1984) §  25.32.  Buckman v. People Express, Inc., 205 Conn. 166, 170-71 (1987).  A covenant of good faith and fair dealing is thus inherent in every contract, including an insured's homeowner's policy, such as Plaintiffs' homeowners' policy, referenced in this case.

In Rock v. Eagle Amer. Ins., 2000 WL 350473 (Conn.Super.), 26 Conn. L. Rptr. 699, the defendant Eagle American Insurance denied the loss claim submitted by the Rocks allegedly based on little more than speculation.  The court ruled that there remained a material question of fact as to whether it breached the covenant of good faith and fair dealing implied in the insurance contract with the Rocks.

17

The Rock Court then denied the Defendant's Motion for summary as to breach of the covenant of good faith and fair dealing.

In the case at bar, Defendant, Colonial Penn, denied the loss claim submitted by the Plaintiffs, Earl Craig and Mary Gore. Defendant concluded that arson was the cause of the fire which destroyed the Plaintiff's home, and accused the Plaintiffs of setting fire to their home in order to obtain money from a fraudulent insurance claim. Plaintiffs contend there is nowhere – and Defendant cannot cite or point to - any objective, independent evidence to corroborate the Defendant's allegation that either one of the Plaintiffs engaged in any "intentional acts of arson", as claimed by the Defendant in its letter of denial of May 9, 2001, or directed anyone else to commit arson. To the contrary, Plaintiffs, parents of three young children, had long desired to own their own home, were elated when they succeeded in purchasing their first home. Several witnesses, e.g. Joe Kent, Evangelist Etta Anderson, and Hakeem Shakoor, testified that the Plaintiffs were excited about owning their own home for the first time, and distressed when it was burnt. Those witnesses further testified that they did not believe that the Plaintiffs had burnt their own home, or participated therein[6]. (In addition, see Exhibits - Lane v. Security Insurance Mutual Company, a fire insurance policy excluding coverage for the intentional fire set by an "insured" is unlawful when applied to exclude coverage to an innocent insured).

Defendant has now moved for summary judgment as to Plaintiffs' claim of breach of the covenant of good faith and fair dealing on the ground that "Plaintiffs have failed to establish any evidence of dishonest purpose or sinister

---

[6].     Plaintiffs have not yet obtained the deposition transcripts of these witnesses because of their straightened financial circumstances.

18

motive on the part of the defendant". (Defendant's Memorandum at 5-10)
Defendant, for the reasons set forth below, is in error.

In his testimony during his deposition by the Defendant, the Defendant's
witness, Anthony DeBiase of Anthony's Autobody, testified that one of the
Defendant's investigators in a discussion with him about the fires at 90-92 Miles
Street had referred to the Plaintiffs as "a couple of niggers", or "a bunch of
niggers", who were essentially trying to get something for nothing. [7]  Mr.
DeBiase's deposition testimony was uncontroverted, and stands unimpeached to
this day.  It was significant that the Defendant did not call the particular
Investigator who was present at the deposition to rebut Mr. DeBiase's claim.

In Carroll v. Allstate Ins. Co., 262 Conn. 433 (2003) (Exhibit T), a similar set of
circumstances prevailed. Defendant Allstate insurance company refused to pay
personal property damage costs, and the Plaintiff sued among other things for
breach of contract, intentional and negligent infliction of emotional distress.
Upon review, the Connecticut Supreme Court ruled that:

> ... the jury could have found that the defendant's investigation was
> improperly motivated in that Haynes was motivated to find arson in
> order to ensure his continued employment by the defendant. In addition,
> the plaintiff's testimony that he had been referred to as a black man and a
> "son of a bitch" could have led the jury to find that the plaintiff's race
> might have played a role in the defendant's conclusion of arson...
>
> The jury reasonably could have found further that the defendant's
> investigation into the cause of the fire caused the plaintiff severe
> emotional distress. The plaintiff testified about the impact of the
> investigation as follows: "This affected me mentally, socially and
> physically. It was, the fire in itself [was], a disaster. But for [the
> defendant] to come along and accuse me of wrongdoing in this fire, that

---

[7].    Plaintiffs have not yet obtained the transcript of Mr. DeBiase's deposition (and some
other deposition transcripts) because of their straightened financial circumstances,

19

was devastating to me personally. I went to bed and I couldn't sleep. I had nightmares. I thought my life was just — had just unraveled before my very eyes. In our entire lives, that is, [my wife] and I, we have never been accused, we have never been engaged in any such activities, any such behavior. And this truly hurt me physically. It was a greater loss to me at the time than the material things." The plaintiff further testified that he experienced a loss of appetite, and that he became extremely depressed. The plaintiff's despondent nature also caused marital discord between the plaintiff and his wife. Ultimately, since the plaintiff could not afford to pay the mortgage on his house while simultaneously paying for temporary housing, he was forced to live out of his truck.

The accusations of wrongdoing also greatly impacted the plaintiff's relationship with those in his community. He testified: "[F]or your neighbors to hear that you have been accused of this type of wrongdoing, the people looking at you with some kind of suspicion and doubt, it was terrible. . . . It is excruciatingly painful. We have been through three and a half years of hell. That's what we [have] been through." The effects of accusations of arson were more acute for the plaintiff because he was a devoutly religious man who was very active in his church. Although the plaintiff's church congregation was supportive throughout his ordeal, the plaintiff nevertheless suffered additional humiliation at the prospect that fellow members of his congregation might have considered him a criminal.

Plaintiffs submit that the evidence in their case shows them similarly situated to the Plaintiff in Carrol, supra. In Carrol, the Connecticut Supreme Court, correctly determined that the evidence presented was sufficient to support the jury's finding that the Defendant negligently inflicted severe emotional distress on the plaintiff, and refused to set aside the Plaintiff's verdict.

Plaintiffs argue that, as in Carrol, among other things (1) the Defendant's denial was based on improper purposes with sinister motives, e.g. their race, and (2) Defendant's purported investigation was mere sham and bogus, made with a pre-determined outcome in mind, i.e. denial of their claim.

20

The Courts have treated seriously and enforce obligations undertaken between insurer and insured. This is especially appropriate given the inherently disproportionate power and resources between the parties, and their binding obligations, as in this case.[8]

Plaintiffs submit that there exists in this case ample evidence of an improper or dishonest purpose or sinister motive on the part of the Defendant, e.g.

     (a)     Defendant's racial comments and taking pictures of Plaintiffs ostensibly "to rule them out", when at all times Defendant believed that the Plaintiffs to be suspects in the arson, although no one else, e.g. the Bridgeport Fire Department, the Bridgeport Fire Department or the Connecticut State Police, acted similarly, or appeared to think or act similarly.

     (b)     Failure to investigate claim promptly and pursue leads provided by the Plaintiffs. Instead, Defendant strung out its investigation, eventually refused to compensate the Plaintiffs. For example, Plaintiffs had alleged in their Examinations Under Oath that the Bridgeport Police Department and the Bridgeport Fire Department, and in their Responses to Defendant's Interrogatories dated August 5, 203, (Exhibit U) had told them that they believed that others may have been involved in the arson of their home.

Plaintiffs submit that the Defendant insurer denied their claim without proper cause, i.e., there was no reasonable basis on which to deny their claim. (See Buckman v. People Express, Inc., 205 Conn. 166 (1987). Plaintiffs also submit that the defendant knew or should have known that there was no reasonable basis on which to deny their claim. Bergen v. The Standard Fire Insurance Company., 1997 W.L. 809957 at *16 (Conn. Super. Ct. 1997) In United Technologies Corp v.

---

[8].     Thus, even, in Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989), a suit under a fire policy that resulted in settlement favorable to insured, the Fourth Circuit Appellate Court, while taking judicial notice of the postsettlement fact that insureds had pled guilty to arson accessory charges, reviewed and affirmed the trial court's determination that the Defendant insurer's offer of judgment could not be revoked even on grounds of fraud.

American Home Assurance Company, 118 F. Supp.2d 181, 188 (D. Conn. 2000),
the District Court suggested that the Connecticut Supreme Court would not limit
a bad faith action to the wrongful denial of an insurance claim and that
"procedural bad faith" in the processing of the claim would also be actionable.
The Defendant never thoroughly or properly investigated the matter.
Defendant engaged in unfounded, scurrilous, speculative, false and defamatory
accusations to the effect that the Plaintiff homeowners burnt down their home in
order to collect insurance money. These unproven accusations were ipso facto
indicative of the Defendant's bad faith. In the final analysis, this question of the
Defendant's alleged bad faith should remain a question for the jury.

Based on the foregoing, there remains a material question of fact as to whether
Defendant breached the covenant of good faith and fair dealing implied in its
insurance contract with the Plaintiffs. (See also e.g. Rock v. Eagle Amer. Ins.
2000 WL 350473 (Conn.Super.), 26 Conn. L. Rptr. 699). Accordingly, viewed in
the light most favorable to the nonmovant Plaintiffs in this case, the Defendant's
Motion for Summary Judgment should be denied as to the Plaintiffs' claim for
breach of the covenant of good faith and fair dealing.

## IV.    Defendant Breached Its Obligations Under CUIPA, And Errs In Its Argument That There Is No Private Right Of Action Under CUIPA

Defendant argues that there is no private right of action under CUIPA and
therefore the Court should grant summary judgment on the Plaintiffs' CUIPA
claim. Defendant errs.

C.G.S.A § 38a-816(6) defines unfair settlement practices as including among other
things failing to pay claims once liability/coverage has become clear, refusing to
pay a claim without conducting a reasonable investigation. Pursuant to C.G.S.A

42-110(g), an insured may assert a cause of action against an insurer for a violation of the CUIPA. Mead v. Burns, 199 Conn. 651 (1986).

Suffice it that the Court writing in Newton & Associates, Inc. v. Dennis Labrasca et al. Superior Court of Connecticut, Judicial District of Hartford. CV- 03- 0828720S. Feb. 4, 2004. 2004 WL 335193, *1 (Conn.Super.) held that:

> There is a split among Superior Court judges as to whether a plaintiff can bring a private cause of action under CUIPA. Macomber v. Travelers Property & Casualty Corporation, 261 Conn. 620 (2002) provides in footnote 14 that a private cause of action is permissible because the court "... reads the plaintiffs' CUIPA count as a vehicle through which to bring a CUTPA claim, rather than as a stand alone claim." Griswold v. Union Labor, 186 Conn. 507, 552 (1982), note 12, states: "Plaintiffs are entitled to maintain a private right of action for monetary damages for alleged unfair trade practice as defined by C.G.S. § 38-61." Further, Travelers in its reply brief of January 23, 2004 concedes that "... the issue in our case is not whether Connecticut law allows an insured, in the appropriate case, to plead a CUTPA count based on CUIPA. Rather, the issue is whether the CUIPA allegations made by the plaintiff are sufficient." This Court, therefore, concludes that a private cause of action is permissible under CUIPA as a vehicle to make a CUTPA claim.

(See also Lefebvre v. Tracy Driscoll & Co., Superior Court, Judicial District of New Britain, Docket No. CV 02 0517796 (May 6, 2003, Cohn, J.). "CUTPA authorizes private causes of action to enforce a claim derived from CUIPA." Id. The Supreme Court has held that a party may obtain relief for a violation of CUIPA by bringing a CUTPA action for an insurance practice alleging the CUIPA violation. See Mead v. Burns, supra at 663- 66).

To argue as does the Defendant that there is no right of private action under CUIPA would be to deny the innocent victims in this case any redress for wrongs suffered and in fact to seek to frustrate the purposes of the law, and its duty to protect the hapless victims of arson, parents and children.

Defendant's argument in this instance is contrary to the broad remedial purposes of both CUIPA and CUTPA. (See also Collins v. Colonial Penn Ins. Co., 257 Conn. 718, 729 2001) ("we read each statute in a manner that will not thwart its intended purpose").

23

Based on the foregoing cases, and many other Connecticut cases and authorities, Plaintiffs have in this case a viable CUIPA claim.


**(B) Unfair Practices:**

Plaintiff's Public Adjuster Robinson's testified during his deposition that Defendant had no reason to deny the Plaintiffs' claim. (Exhibit V). Defendant has also indicated that, in a similar case, involving a Mrs. Sabo (phonetic – counsel has made a diligent search of reported cases, but has been unable to locate the case referenced by the Defendant's counsel) it denied the homeowner coverage, alleging that the elderly and disabled homeowner had either committed arson or arranged the arson of her home.

The evidence in this case shows repeated unfair practices by this Defendant inimical to the contractual and statutory rights of homeowner insurance policy holders such as the Plaintiffs in this case..

Viewed in the light most favorable to the non-moving Plaintiff parties in this case, the materials, inferences and ambiguities, which compel the conclusion that there exist here genuine issues of material fact, and that Defendant breached their obligations to the Plaintiffs. Defendant's motion for summary judgment should be denied as to Count Four.


V.     **Defendant Errs in its Argument that Plaintiffs CUTPA Claim as set forth in the Fifth Count is Insufficient as a matter of law.**

First, a motion to strike is typically the proper procedural vehicle when challenging the legal sufficiency of a pleading. rather than a motion for summary judgment. See Jensen v. DePaolo 2004 WL 574844 (Conn.Super.) also Galgano v. Metropolitan Property & Casualty Ins. Co., 64 Conn.App. 25, 27-28 n. 3, (2001). Here, the Defendant, perhaps assuming that the motion to strike is converted into a motion for summary judgment, moves for judgment on the basis of a putative legal deficiency.

24

Secondly, there are several cases in which Colonial Penn Insurance, as a national corporate defendant, has wrongfully refused to pay homeowners for legitimate losses sustained at their homes. By way of example, in McGeouch v. Colonial Penn Ins. 1994 WL 260684, (D.N.H.) the parties asserted conflicting explanations for the cause of the damage to the Plaintiffs' home. The plaintiffs alleged that the damage was caused by smoke, while the defendants argue it was caused by contaminants in the furnace. The Court held that the actual cause of the damage presented a genuine issue of material fact to be resolved at trial. Accordingly, the Court denied Colonial Penn's Motion for Summary Judgment. (Exhibit W)

(See also Eveleno v. Colonial Penn Ins. Co., supra, 2001 N.Y. Slip Op. 21309 Civil, and the Sabo (phonetic) case refereed to by the Defendant) (See also Exhibit X - Garamendi's "Good, bad and Ugly" annual report highlights state's best and worst auto, homeowners and life insurers). In homeowners insurance, Colonial Penn, was ranked the second worst company in 1993). Given the relatively large numbers of complaints and cases against Colonial Penn Insurance Company concerning homeowners settlements, then and now, how can Defendant plausibly and reasonably maintain that this Defendant has not, based on court decisions, some cited above, did not as a factual matter, and as a matter of law engage in unfair and deceptive practices?

Third, it is well settled that Connecticut courts "presume that the legislature intends sensible results from the statutes it enacts.... Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results." Collins v. Colonial Penn Ins. Co., 257 Conn. 718, 728-29 (2001). To argue as does the Defendant that Plaintiffs in this case have no remedy under either CUIPA and CUTPA would be to deny the innocent victims in this case redress for wrongs suffered. Defendant would in fact wrongfully seek to enlist this Court's assistance to frustrate the broad remedial and beneficent purposes of

25

CUTPA, and in this case the law's duty to protect the less fortunate, parents and their children, innocent victims of arson.

Moreover, CUTPA can be used to maintain a private right of action if the allegation incorporates a CUIPA prohibition, as in the Plaintiffs' case, and meets the standard of a fraudulent practice and intentional misrepresentations. A plaintiff complaining of unfair insurance practices is entitled to maintain a private right of action under CUTPA for alleged unfair trade practices. Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 519-21 (1982).

Finally, Plaintiffs' counsel has requested, and is still awaiting, copies of all similar homeowners complaints filed with the Connecticut Department of Insurance over the past three (3) years, and any similar complaints prior to that time. (Counsel has been advised that the Department's policy is to keep such complaints only for a period of 3 years).

Viewed in the light most favorable to the Plaintiffs, the non-moving parties in this case, the materials illumine facts, inferences and ambiguities, which compel the conclusion that there exist here genuine issues of material fact, and that Defendant breached their obligations to the Plaintiffs, and Defendant's motion for summary judgment should be denied as to Count Five.

## VI.   Counts VI And VII Are Properly Plead And The Facts In This Case Show That The Defendant Engaged In Intentional And Negligent Misrepresentation

In this case the Defendant purported to issue the Plaintiff coverage on or about August 3, 2000, 12.01 a.m.   Plaintiff Mary Gore had applied for homeowners insurance with the Defendant on or about July 17, 2000.  Defendant through the statements by their agent Tony, Tim Lawson and Marion Guzik, to the Plaintiff

26

represented among other things that there was coverage, and that they would honor their obligations under the policy, and pay the Plaintiffs in the event of losses such as the Plaintiffs suffered on August 2, 2000 and August 4, 2000. (Excerpts from Plaintiffs' EUOs. (Exhibit Y))

Plaintiffs relied upon the representations by the Defendant's agent "Tony" who sold them the policy, the policy provisions, and the representations of the Defendant's Investigators, Lawson and Guzik, that they intended to pursue a fair and honest investigation so that they could pay Plaintiffs. At the same time the Defendant was making the latter representations, they in fact had no intention to compensate the Plaintiffs.

Plaintiffs in this case have presented in their complaint "a short and plain statement" of their claims showing that they "are entitled to relief". FRCP 8(a)(2) As pointed out in Moore ¶ 8.02 "[T]he real importance of the Rules dealing with the pleadings is that ... Cases are to be decided on their merits".
Any lack of dates as alleged by the Defendant is not fatal if only to the extent that Defendant Colonial Penn engaged in continuing violation of their agreement with the Plaintiffs beginning from the time that the Plaintiffs undertook the homeowners' insurance contract with them, continuing through their denial of coverage, and their subsequent actions. Plaintiffs' complaint placed Defendant squarely on notice of the Plaintiffs' claims. It cannot reasonably be said that based on the facts in this case, that there exists some insuperable bar to relief, and that the Plaintiffs can on no set of facts or circumstances possibly recover in this case.

Viewed in the light most favorable to the Plaintiffs, the non-moving parties in this case, the materials illumine facts, inferences and ambiguities, which compel the conclusion that there exist here genuine issues of material fact, and that

27

Defendant breached their obligations to the Plaintiffs, and Defendant's motion for summary judgment should be denied as to Counts Six and Seven.

**VII.**   **Defendant Statements That The Fires At The Plaintiffs' Home Were The Result Of Intentional Acts Of Arson By Or At The Direction Of The Insureds Were False And Defamatory.**

To recover in a defamation action, the plaintiff must show that the defendant, without privilege, intentionally or negligently published the false and defamatory statement to a person other than the one defamed. Miles v. Perry, 11 Conn. App 584, 529 A.2d 199, 209n.11 (1987). See also Restatement (Second) of Torts § 577 (1) ("Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed").

Publication occurs where the third party understands the words to be defamatory. De Santo v. De Nicola, 99 Conn. 717, 122 A. 708 (1923) and the cause of action is complete once a publication has occurred to at least one- third person.

Even intra-corporate communications within the defendant Colonial Penn, preceding their letter of denial dated may 9, 2000, alleging arson on the part of the Plaintiffs, are not privileged. In Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 662 A.2d 89 (1995) the Connecticut Supreme Court rejected the view that intra-corporate communications do not constitute "publication" of a defamatory statement. Rather, a communication within the scope of employment by one agent to another agent of the same principal is a publication not only by the first agent, but also by the principal. Id. See also Battista v. United Illuminating Co., 10 Conn. App. 486, 489, cert. denied 204 Conn. 803 (1987) affirming finding of defamation where corporation accused plaintiff employee of theft in letter that was sent to plaintiff and three other agents of corporation).

As pointed out above, the Defendant's Investigator, during the course of his investigation of the Plaintiffs' claim, allegedly falsely characterized the Plaintiffs as "a couple of niggers" trying to buy a house for $1.00, burn it down and get

28

insurance money. (See Deposition of Anthony DeBiase , September 25, 2003)[9] Mr. DeBiase denied any personal involvement in the fires. Mr. Lawson was present at Mr. DeBiase's deposition, but was not offered, did not deny, or chose not to testify, or otherwise disavow the racial remarks he allegedly made, per Mr. DeBiase's deposition testimony.

Viewed in the light most favorable to the Plaintiffs, the non-moving parties in this case, the materials illumine facts, inferences and ambiguities, which compel the conclusion that there exist here genuine issues of material fact, and that Defendant breached their obligations to the Plaintiffs, and Defendant's motion for summary judgment should be denied as to Count Eight.

## VIII.   COUNT Nine- Severe Emotional Distress – There Is Ample Evidence That The Defendant's Conduct In This Case Was Extreme And Outrageous And Caused Plaiintiffs Severe Emotional Distress

Defendant moves for Summary Judgment as to Counts Six and Seven – Plaintiffs' claim for intentional infliction of emotional distress on the ground that plaintiff fails to allege conduct attributable to the defendant that was extreme and outrageous.

In order to establish a claim of intentional infliction of emotional distress under Connecticut law, the plaintiff must establish (1) the defendant intended to inflict the emotional distress or knew or should have known that emotional distress was a likely result  of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe.  Petyan v. Ellis, 200 Conn. 243, 253  (1986); Bertozzi v. McCarthy, 164 Conn. 463, 469 (1973).  See also Whelan v. Whelan, 41 Conn. Supp. 519, 521, Szymanski v. Hartford Hospital, No. 363831, Clark, J. (Conn. Supp. 1991); Brown

---

[9].    Plaintiffs have not yet obtained the transcript of Mr. DeBiase's deposition (and some other deposition transcripts) because of their straightened financial circumstances,

29

v. Ellis, 40 Conn. Supp. 165 (1984); Murray v. Bridgeport Hospital. 40 Conn. Supp. 56 (1984); Hiers v. Cohen, 31 Conn. Supp. 305 (1973).

Thus, to be actionable as intentional infliction of emotional distress, the defendant must have acted either with deliberate purpose to cause the distress, or with knowledge to a substantial certainty that such distress would result. Petyan at 253. A cause of action will also lie if the defendant recklessly caused the plaintiff severe emotional distress.

"[E]xtreme and outrageous" conduct has been defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 267 (1991). Whether a defendant's conduct is extreme and outrageous is ordinarily a question of fact, Bozzuto v. Holler, 1996 WL 737516 (Conn.Super.Ct.1996); Redding v. Liberty Bank, 1996 WL 383379, (Conn.Super.1996),

An action for intentional infliction of emotional distress will lie only where the defendant's extreme and outrageous conduct causes the plaintiff severe distress. (Morris v. Hartford Courant Co., 200 Conn. 676, 513 A.2d 66, 69 n.3 (1986); Brown v. Ellis, 40 Conn. Supp. 165, 484 A. 2d 944, 946 (1984). The defendant's actions must have been so flagrant that they would have caused severe distress in a person of ordinary sensibilities; the hypersensitive plaintiff will not be compensated. Thus, in order to be actionable, the defendant's conduct must be "outrageous" and must exceed "all bounds usually tolerated by decent society." Koehler v. Chesebrough-Ponds, Inc., 705 F. Supp. 721, 724 (D. Conn. 19888); Whelan v. Whelan, 41 Conn. Supp. 519, 522-23 (1991); Petyan v. Ellis, 200 Conn. 243, 235 n.5, 510 A. 2d 1337, 1342 n.5 (1986).

Connecticut courts have held that emotional distress is severe where it reaches a level which "no reasonable person could be expected to endure." See Mellaly v. Eastman Kodak, 42 Conn. Supp. 17, 597 (1991).

30

However, a defendant may still be held liable, even for relatively minor acts, if such a defendant knew of the plaintiff's particular vulnerability and deliberately took advantage of that vulnerability.  The general rule is that:

> The extreme and outrageous character of the conduct may arise from the actor's *knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity*.  The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.  Brown v. Ellis, 40 Conn. Supp. 165, 484 A. 2d 944 (1984) quoting Restatement (Second) of Torts § 46 comment f. (emphasis added)

This Defendant claims that its actions were neither extreme nor outrageous.  But, any false, wrongful, unsubstantiated, uncorroborated accusation that a homeowner burned down his own home to collect insurance monies is *ipso facto* extreme and outrageous.  Moreover, to act on such a false, wrongful accusation, and to perpetuate such a vile and wicked slander and libel is not only extreme and outrageous but also transcends the bounds of decency.

In Connecticut, in order to recover for negligent infliction of emotional distress, a plaintiff must prove:

> (1) the defendant engaged in negligent conduct which violated a duty of care towards the plaintiff; and

> (2) "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm."

Montinieri v. Southern Telephone Co., 175 Conn. 337 (1978); Urban  v. Hartford Gas Co., 139 Conn. 301, 307 (1952) Szymanski, supra; Maloney v. Conroy, 208 Conn. 392, 398.

Negligence is a violation of a duty.   Thus, the Plaintiffs must prove that the Defendant owed them a duty of care. Jonelis v. Russo, 863 F.Supp. 84, 88 (D.Conn.1994).  Plaintiffs here allege that (1) Defendant, Colonial Penn, their insurers, acted in a fiduciary capacity in this case, and owed them a duty of care, and (2) breached that duty, by falsely accusing them of "intentional acts of arson by or at the direction of the insureds", and based upon

31

these unfounded and uncorroborated allegations denied them their rightful proceeds under the insurance contract with the Defendant. .

Plaintiffs Craig and Gore were vulnerable plaintiffs. They were of low income and limited means. Plaintiffs both suffered, and suffer from documented, diagnosed  medical conditions, including heart disease, diabetes, hypertension and other serious medical conditions. (See Exhibit Z - Gore EUO, p159-60,  162-63, Craig EUO). Ms. Gore herself did not graduate from high school. Their children had, and have documented "special needs". The Defendant's agents knew these facts at the time of the investigation, and prior to Defendant's denial of the Plaintiffs' claim. Defendant's investigators Lawson and Guzik met with Plaintiffs Mary Gore and Earl Craig shortly after the first fire purporting to carry out a fair investigation into the Plaintiffs' claim. They assessed, photographed plaintiffs and took statements from them.

Thereafter, while the Defendant contrived a lengthy 10 month investigation of the Plaintiffs' claim, during that time, the Defendant provided no alternative, emergency accommodation for the Plaintiffs and their minor children after they were burned out of their home on August 2, 2000 and August 4, 2000.   Forced to live in squalid, derelict, decrepit conditions, it was as a result of the Defendant's negligence and carelessness that the Plaintiffs lost custody of their minor children to the DCF shortly after the fires. Rather than treat them fairly, in any way, shape or fashion, and pay them their due, Defendant disparaged, derided and insulted them as "a couple of niggers" trying to buy a house for $1.00, burn it down and get insurance money. (See Deposition of Anthony DeBiase, September 25, 2003, supra) Ms. Gore confided in her pastor, the Reverend James Gore, as to the enormous emotional distress, which she and her family suffered because of the actions of this Defendant.

32

The Defendant either intentionally or negligently inflicted severe emotional distress on Plaintiffs. Plaintiffs submit that viewed in the light most favorable to the Plaintiffs, the non-moving parties in this case, that the materials clearly lead to the conclusion that there exist genuine issues of material fact in this case, that Defendant moreover breached its obligations to the Plaintiffs, and Defendant's motion for summary judgment should be denied.

## CONCLUSION:

For all of the above reasons, Defendant's Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted
EARL CRAIG and MARY GORE

By_____
Caleb M. Pilgrim
LAW OFFICES OF CALEB M. PILGRIM, LLC
1404 Whalley Avenue
Second Floor
New Haven, Connecticut 06516
Tel: (203) 387-2524
Federal Bar No. ct 14857

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5(b), I hereby certify that a copy of the above was mailed on March 25, 2006, to Joel Rottner, Esq., P.O. Box 340890, Hartford, CT 06134-0890.

_____
Caleb M. Pilgrim

33