Original

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| EARL CRAIG & MARY GORE | * | CASE NO. 302 CV 1630(JBA) |
| Plaintiffs | * | |
| | * | |
| v. | * | APRIL 8, 2004 |
| | * | |
| COLONIAL PENN INSURANCE, INC. | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS' LOCAL RULE 56(A) 2 STATEMENT

1. Admitted.
2. Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof.
3. Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof.
4. Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof. Plaintiffs have also pointed to multiple fires, of suspicious origin, on Miles Street, Bridgeport, (Exhibit A), and maintained that a third party set the fire on August 2, 2000, and that they (Plaintiffs) were the victims of arson, which the Defendant deliberately refused, or failed to investigate. (Exhibit B. Excerpts Plaintiffs' EUOs, and other materials).
5. Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof. Contrary to Defendant's expert, the City of Bridgeport did not conclude that "the structure was unsound and required demolition" of the property at 90-92 Miles Street, Bridgeport, after the fire on August 2, 2002. In fact, the City of Bridgeport issued permits necessary to "repair", rather than demolish, the subject property, on or about January 29, 2001. (Exhibit C)

1

6.    Admitted to the extent that Plaintiffs only applied for, and Defendant only issued Plaintiffs one policy. Denied as to the Defendant's claim that the policy "incepted on August 3, 2000 at 12.01 a.m". Plaintiffs sought, and were promised by the Defendant's agent, and former employee, "Tony", and paid for coverage by the Defendants well before August 3, 2000 at 12.01 a.m. (Exhibit D) Plaintiffs were never advised that coverage would be provided belatedly, i.e. after midnight on August 3, 2000. Even if one Plaintiff, were so advised, – which is not conceded, in any way, shape or fashion, - does not obviate the need to expressly notify the other insured of the belated coverage. (Exhibit E)

7.    Denied to the extent that the Bridgeport Fire Department's Report (Defendant's Exhibit A) states the alarm time as "21.50", (i.e. 9.50 p.m.) not 11.50 p.m, as Defendant now alleges.

8.    Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof. Plaintiffs have also pointed to multiple fires, of suspicious origin, on Miles Street, Bridgeport, and maintained that a third party set the fire on August 2, 2000, and that they (Plaintiffs) were the victims of arson, which the Defendant deliberately refused, or failed to investigate. (Exhibit B)

9.    Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof. Plaintiffs have also pointed to multiple fires, of suspicious origin, on Miles Street, Bridgeport, and maintained that a third party set the fire on August 2, 2000, and that they (Plaintiffs) were the victims of arson, which the Defendant deliberately refused, or failed to investigate. (Exhibit B)

10.   Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof. Plaintiffs have also pointed to multiple fires, of suspicious origin, on Miles Street, Bridgeport, and maintained that a third party set the fire on August

       2, 2000, and that they (Plaintiffs) were the victims of arson, which the Defendant deliberately refused, or failed to investigate. (Exhibit B)

11. Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof. Plaintiffs have also pointed to multiple fires, of suspicious origin, on Miles Street, Bridgeport, and maintained that a third party set the fire on August 2, 2000, and that they (Plaintiffs) were the victims of arson, which the Defendant deliberately refused, or failed to investigate. (Exhibit B)

12. Denied.

13. Admitted.

14. Denied. (Exhibit F). Also, the Plaintiffs' minor' children, Shayvonne Gore and Jamia Craig were both consistent in their testimony in their depositions on August 5, 2003, that they lived and slept at 90-92 Miles Street, that "there was electricity" there, and that they "were still moving in" at the time of the first fire on August 2, 2000)[1]. (See also Exhibit G - Costabile v. Metropolitan Property and Cas. Ins. Co.193 F.Supp.2d 465 (D.Conn.,2002) (Nevas, J., denying defendant's motion for summary judgment after property insurer denied coverage for fire in rental property under vandalism and malicious mischief exclusion for premises).

15. Denied. (See Plaintiffs' response to # 14, above).

16. Denied. The portion of the Plaintiff's responses referenced by the Defendant is selective, incomplete and misleading. Plaintiff Craig stated that "Like I said, who will buy a burned house and who going to give you insurance on a house already burnt? That's ridiculous. That don't make no sense." (Defendant's Exhibit H).

17. Plaintiffs are without sufficient information as to the bases of the Defendant's expert's opinion and leave Defendant to its proof.

18. Admitted.

19. Admitted.

20. Denied. Moreover, Plaintiffs object to this "statement of fact" as self-serving and hearsay, and on the grounds that pursuant to FRE 1002, the transcripts of the Plaintiffs' Examinations under Oath, and the Plaintiffs'

3

Responses to the Defendant's Interrogatories, dated August 5, 2003, (Exhibit I) which will be offered into evidence at trial, are the best evidence, and more accurate and reliable evidence, than the Affidavit of this Defendant's investigator.

The Investigator, during the course of his investigation of the Plaintiffs' claim, among other things, allegedly characterized the Plaintiffs as "a couple of niggers" trying to buy a house for $1.00, burn it down and get insurance money. (Deposition of Anthony DeBiase, September 25, 2003)[1] Mr. Lawson was present at Mr. DeBiase's deposition, but was not offered, did not deny, or chose not to testify, or otherwise disavow the racial remarks he allegedly made, per Mr. DeBiase's deposition testimony. Mr. DeBiase, who owns many properties on Miles Street, (Exhibit J) denied any personal involvement in the fires at 90-92 Miles Street.

Moreover, the deposition testimony of Ira Thomas indicates that Investigator may well have colored, if not falsified that witness's statement/affidavit. (Exhibit K. See also Carrol v. Allstate Ins. Co, 262 Conn. 433 (2003) – "Plaintiff's testimony that he had been referred to as a black man and a 'son of a bitch' could have led the jury to find that the plaintiff's race might have played a role in the defendant's conclusion of arson". Exhibit L)

21.   Denied. Moreover, Plaintiffs object to this "statement of fact" as self-serving and hearsay, and on the grounds that pursuant to FRE 1002, the transcripts of the Plaintiffs' Examinations under Oath, and Plaintiffs

---

[1].   Plaintiffs have not yet obtained the transcript of Mr. DeBiase's deposition (and the deposition transcripts of some other witnesses) because of Plaintiffs' dire, impoverished, financial circumstances,

4

Responses to Defendant's Interrogatories dated August 5, 2003. which will be offered into evidence, at trial are the best evidence, and more accurate and reliable evidence, than the Affidavit of this Defendant's investigator. The Investigator, during the course of his investigation of the Plaintiffs' claim, among other things, falsely characterized the Plaintiffs as "a couple of niggers" trying to buy a house for $1.00, burn it down and get insurance money. (See Deposition of Anthony DeBiase, September 25, 2003)[2] Mr. DeBiase denied any personal involvement in the fires. Mr. Lawson was present at Mr. DeBiase's deposition, but was not offered, did not deny, or chose not to testify, or otherwise disavow the racial remarks he allegedly made, per Mr. DeBiase's deposition testimony.

22. Denied. Moreover, Plaintiffs object to this "statement of fact" as self-serving and hearsay, and on the grounds that pursuant to FRE 1002, the transcripts of the Plaintiffs' Examinations under Oath, and Plaintiffs Responses to Defendant's Interrogatories dated August 5, 2003. which will be offered into evidence at trial, are the best evidence, and more accurate and reliable evidence, than the Affidavit of this Defendant's investigator. The Investigator, during the course of his investigation of the Plaintiffs' claim, among other things, allegedly characterized the Plaintiffs as "a couple of niggers" trying to buy a house for $1.00, burn it down and get insurance money. (See Deposition of Anthony DeBiase , September 25, 2003)[3] Mr. DeBiase denied any personal involvement in the fires. Mr. Lawson was present at Mr. DeBiase's deposition, but was not offered, did not deny, or chose not to testify, or otherwise disavow the racial remarks he allegedly made, per Mr. DeBiase's deposition testimony.

---

[2].    See n.1 above.

[3].    See n.1 above.

## **DISPUTED ISSUES OF MATERIAL FACT**

The disputed issues of material fact in this case include, but are not limited to the following. Plaintiffs reserve the right to supplement their present response.

1. Whether there was evidence that the Plaintiffs and their three children occupied the premises at 90-92 Miles Street, Bridgeport, CT 06607 on August 2, 2000 and thereafter?
2. When did Plaintiffs pay the Defendant for the homeowners' insurance coverage at issue in this case?
3. When did the Defendant credit the Plaintiffs for payment, and initiate coverage?
4. Whether there existed a valid, effective homeowners' insurance policy between the parties on August 2, 2004, providing coverage to the property at 90-92 Miles Street, Bridgeport, CT 06607?
5. Whether there existed a valid, effective homeowners' insurance policy between the parties on August 4, 2004, providing coverage to the property at 90-92 Miles Street, Bridgeport, CT 06607?
6. Whether the Defendant engaged in unfair claim settlement practices in one or more of the following ways:

   a) Misrepresented pertinent facts or the Plaintiffs' homeowners' policy provisions and the Defendant's intentions as to coverages at issue?
   b) Failing to acknowledge and act with reasonable promptness upon communications concerning Plaintiffs' claims arising under their homeowners' insurance policy?
   c) Failing to adopt and implement reasonable standards for the prompt and fair investigation of claims arising under insurance policies?
   d) Failed to reasonably, promptly and adequately investigate the Plaintiffs' claims?

    e)    Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been completed?

    f)    Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims such as the Plaintiffs, in which liability was reasonably clear?

    h)    Compelled the plaintiff by their actions to institute this litigation to recover amounts due under the insurance contract?

7. Whether the testimony of one of the Defendant's witnesses as to the Defendant's alleged statements that Plaintiffs were just "a couple of niggers" trying to buy a house for $1.00, burn it down and get insurance money, evidenced an improper reason, or a sinister motive for the Defendant's decision(s) denying coverage?

8. Whether the Defendant's actions in denying Plaintiff's claim breached the insurance contract between the Plaintiffs' and the Defendant?

9. Whether defendant's promises to pay the Plaintiffs for coverage of their lost property constituted misrepresentation?

10. Whether Defendant's racial remarks and then their allegations that Plaintiffs burnt their own property, and Defendant's conduct. including but not limited to a prolonged investigation, and subsequent denial of coverage, defamed Plaintiffs, was extreme and outrageous?

11. Whether Defendant's racial remarks, actions and conduct, were extreme and outrageous conduct likely to cause the Plaintiff's severe emotional distress?

12. Whether Defendant's remarks, actions and conduct, did in fact cause the Plaintiffs to suffer severe emotional distress?

13.

                        Respectfully submitted,
                        THE PLAINTIFFS
                        EARL CRAIG and MARY GORE

By _____
Caleb M. Pilgrim
LAW OFFICES OF CALEB M. PILGRIM, LLC
1404 Whalley Avenue
Second Floor
New Haven, Connecticut 06516
Tel: (203) 387-2524
Federal Bar No. ct 14857

### CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5(b), I hereby certify that a copy of the above was mailed on April 8, 2004 to Joel Rottner, Esq., P.O. Box 340890, Hartford, CT 06134-0890.

_____
Caleb M. Pilgrim